The International Trust Company, Plaintiff, Appellants, v. The Keokuk Electric Street Railway Company et al., Defendants.

**Superior Court: Jurisdiction.** McClain's Code, section 782, does not deprive the superior court of jurisdiction to direct a sale of property under a foreclosure granted by it, but the process for the sale must issue out of the district court, on a transcript filed therein. (2)

**Consent to sale without such process: waiver.** When land is sold by consent of all parties, under an order of the superior court, the parties consenting can not question the sale because not made under process of the district court. (3)

**Setting aside sale: insufficient cause.** The fact that one consenting party did not bid at the sale by reason of an erroneous belief that the sale was invalid, because made under the order of the superior court, will not set the sale aside. (3)

*Appeal from Keokuk Superior Court.*—Hon. Henry Bank, Judge.

Tuesday, January 30, 1894.

This appeal is by intervenors James H. Anderson and the Lewis & Fowler Manufacturing Company, from an order approving a sale of the defendant's property. The proceedings appear in the opinion.—*Affirmed.*

*Jas. H. Anderson* and *Jno. W. Cahill* for appellants.

*W. J. Roberts* for appellants Townsend & Son.

*James C. Davis* for appellee.

GIVEN, J.—I. The principal question presented on this appeal is as to the jurisdiction of the superior court. The following is a sufficient statement of the proceedings for the purposes of that question: On December 5, 1891, the plaintiff, as trustee, commenced this action to foreclose a mortgage executed to it as trustee by the defendant on all its property as an entirety, including certain real estate in the city of Keokuk, to secure to the holders thereof two hundred bonds of five hundred dollars each. December 24, 1891, appellant Anderson intervened, claiming to hold and own twenty-six of said bonds, namely, numbers 34 to 60, inclusive, and joining with the plaintiff in the prayer for judgment. Eleven other bondholders and creditors also intervened, and on February 19, 1892, all parties to the action appearing, an entry was made of record, in substance as follows: The court found that the mortgaged property "is at present in such a condition that its proper preservation requires large amounts to be expended in the betterment and improvement of said property; that said property in its present condition is of a perishable nature, and the interest of all parties concerned in same requires a speedy sale of said property to be made." The entry continues: "It is therefore ordered, considered and adjudged by the court, all parties to this controversy expressly agreeing hereto, and further agreeing that this court has complete jurisdiction, that the sale hereinafter provided shall be without right of redemption, and shall convey all of the interests of all of the parties, both complainants, defendants, and intervenors, to this controversy, in fee

simple to the purchaser at such sale." Following this, John Kenney is appointed commissioner, to advertise, sell and convey the mortgaged property "as a whole," in the manner and upon the terms and conditions prescribed. It was provided that appraisers be appointed, and the property appraised, and that it should not be sold for less than two thirds of the appraisement without the further order of the court. It was also provided that if the purchaser was one claiming to own bonds he should give security for the payment of the amount coming on such bonds from the sale in the event he was found not to be the owner thereof. Appraisers were appointed, and the property appraised as an entirety at thirty-one thousand dollars. The case was continued for further hearing as to priorities and the disposition of unpaid subscriptions to the capital stock of defendant company. On March 7, 1892, the Lewis & Fowler Manufacturing Company intervened, claiming to own bond number 31, and asking that it be allowed. On April 9, 1892, judgment was rendered on the bonds numbers 34 to 60, inclusive, held by appellant Anderson, and number 31, held by the Lewis & Fowler Manufacturing Company, against defendant, and that they share *pro rata* with all valid bonds secured by the mortgage. S. P. Townsend & Son intervened, claiming to hold and own one hundred and twenty-four of said bonds, the numbers of which are given, and asked to share in the distribution. They also asked that the sale be postponed thirty days, to enable them to negotiate with the holders of the other bonds for the purchase thereof, or the formation of a new organization for the purchase and operation of the defendant's railway. The sale was postponed until April 21, 1892. On April 19 appellants answered the petition of S. P. Townsend & Son, joining issue as to their ownership of said one hundred and twenty-four bonds. April 23, 1892, Mr. Kenney, commissioner, reported that in accordance

with the decree, and in pursuance of notice duly given, he offered the property and franchises of defendant for sale on April 21, 1892, and sold the same to S. P. Townsend & Son for twenty-one thousand dollars, that being the highest and best bid, and more than two thirds of the appraised value; and that Townsend & Son had deposited with him five thousand dollars, as required by the decree. With his report the commissioner presented a deed for approval, and asked an order as to the terms upon which it should be delivered. On the same day the affidavit of appellant Anderson was filed in opposition to the confirmation of said report and sale.

The substance of the affidavit is that on the twentieth of April, 1892, affiant said to S. P. Townsend that he was willing to sell his interest at a fair price, or to go in with other bondholders and purchase the property, and pay his proportionate share to fix the road up. That Townsend said he would rather sell at thirty-five cents on the dollar, but did not care to make arrangements with other bondholders to bid in the property. That one Wernse, who held two thousand dollars of bonds authorized affiant to bid in the road for himself and such persons as might want to go in at twenty-five thousand dollars. That affiant telegraphed one Suber to come and attend the sale, and that Suber had ready money, which he could use to buy in the property. That they attended the sale, and that when Mr. Kenney offered the property "notice was given by B. A. Dolan, in the hearing of every one, that the superior court had no power to issue any executions for the sale of real estate, and that it was his purpose to at once levy on the power house and real estate" for a judgment he had, "and that Suber then declined to bid, and that affiant was not prepared to do so without his assistance." It was admitted that, a few days after the postponement of the sale, the attorney for Townsend & Son

offered, for them, to pay Anderson thirty-two cents on
the dollar for his bonds. Also that the attorney of
Townsend & Son made another offer of thirty-two cents
to Anderson, which he declined, and that an offer sub-
mitted by him was never replied to. On the same day
—April 23, 1892—the court approved the sale and
deed, and made specific orders as to the payment of
the purchase money, the securing of the amount
retained on account of the bonds claimed by the pur-
chasers, and ordered the delivery of the deed on
compliance with said orders; "to all of which order the
said James H. Anderson and Lewis & Fowler Manu-
facturing Company at the time excepted." A further
decree was entered August 6, 1892, determining the
rights of the different bondholders, and ordering a dis-
tribution of the proceeds arising from the sale.

II. In considering the question of jurisdiction we
will refer to the act providing for superior courts as
found in McClain's Annotated Code. Section 769 con-
fers jurisdiction on superior courts "in all civil matters
concurrent with the district court as now and as may
hereafter be provided by law, except in probate mat-
ters and actions for divorce, alimony and separate
maintenance." Section 772 is as follows: "The
superior court shall be a court of record, and all stat-
utes in force respecting venue and commencement of
actions, the jurisdiction, process, and practice of the
district court, the pleadings and mode of trial of action
at law or in equity, and the enforcement of its judg-
ments by execution or otherwise, and the allowance
and taxing of costs, and the making of rules for prac-
tice or otherwise, shall be deemed applicable to the
superior court, except wherein the same may be incon-
sistent with the provisions of this act. The records
and papers properly filed in a cause in the district
court are equally evidence in said superior court."
If nothing further appeared, the jurisdiction of superior

courts to enter and enforce judgments in civil matters, both law and equity, except as named, would not be questioned. Appellants do not claim that the superior court did not have jurisdiction over the persons and subject-matter of this action. Its jurisdiction to try the case, as between all parties, and to enter judgments, and to decree a foreclosure of the mortgage, is not questioned, but the contention is that it did not have jurisdiction to order or approve the sale of the mortgaged property. Section 782 is as follows: "Judgments in said court may be made liens upon real estate in the county in which the city is situated, by filing transcripts of the same in the circuit court, as provided in sections three thousand, five hundred and sixty-seven and three thousand, five hundred and sixty-eight of the Code, relating to judgments of justices of the peace and with equal effect, and from the time of such filing it shall be treated in all respects as to its effect and mode of enforcement as a judgment rendered in the district court as of that date, and no execution can thereafter be issued from the said superior court on such judgment, and no real property shall be levied on, or sold on process issued out of the court created under the provisions of this act; and judgments of said superior court may be made liens upon real estate in other counties in the same manner as judgments in the district courts." Section 4089 makes judgments in the supreme and district court liens upon real estate; hence, if it were not for section 782, it might be said that under the jurisdiction conferred by sections 769 and 772 judgments of superior courts are also liens on real estate.

It is clear, however, that they are not liens upon real estate, unless made so as provided in said section 782; and that real estate can not be levied on or sold on process issued out of the superior court when transcript of its judgment has been filed in the district court. The pro-

vision of section 782 that "no real property shall' be levied on or sold on process issued out of the court created under the provisions of this act," limits levies and sales under process of that court to personal property. The evident purpose of the statute is to preserve the evidence of judgment liens on real estate, and of titles based upon sales thereunder in the district court. The provision in said section 769 in regard to attachments from superior courts, that "where real property is levied on by writs of attachment the officer levying the writ shall make entry thereof in the incumbrance book in the office of the clerk of the district court in like manner and with like effect as of levies made in the district court," emphasizes the view we have expressed. Our conclusions are, that in all civil matters, other than those excepted in section 769, superior courts have jurisdiction concurrent with the district court to try and determine the issues, whether at law or in equity, and to render judgments therein as fully as the district court might do; that, when an existing lien on real estate is established and foreclosed, the court may direct the property to be sold to satisfy the judgment; and that, in all cases, process for the sale of real estate to satisfy judgments of a superior court must issue out of the district court upon transcripts filed therein.

III.    It will be seen from the statement of the case that the entire proceedings following the filing of the petition up to and including the sale were in pursuance of the agreement of all the parties, and that the sale was made in all respects in exact accordance with the manner and terms agreed upon; that no judgment had been entered prior to the entry of the agreement to sell, in the form of a decree, and that no judgment was entered, except that in favor of appellants, and no decree of foreclosure, before the sale in question was made. It does not appear that any process was issued out of the superior court for the sale of this property,

but that the commissioner proceeded to advertise and sell it in the manner and upon the terms agreed upon as expressed in the so-called "decree." In the proceedings to sell, neither the jurisdiction nor judgment of the court was invoked. It was not called upon to determine anything. Everything that was done was by agreement of the parties, and not by any exercise of power on the part of the court. The court had jurisdiction of the case, and the parties, agreeing upon a sale of the property because of its condition, appeared before it, and by common consent had their agreement entered upon the record of the case. The proceeding is unusual, in that the agreement of the parties is thus evidenced; yet the sale was not by virtue of any power exercised by the court, nor upon process issued by it, but exclusively by authority of the agreement of all the parties. Appellants cite cases wherein this court has held that, when a court has no jurisdiction of the subject-matter, jurisdiction thereof can not be conferred by consent, and argue that consent could not give jurisdiction to order the sale, and consequently no jurisdiction to approve it. In our view of the case the principle stated does not apply, as the sale was not by order of the court, but by consent of the parties. All parties in interest having agreed to a sale as made, they should be bound thereby, unless for good reason. Appellants show no reasons for setting aside this sale, other than those stated in the affidavit of appellant Anderson, and these we do not think are sufficient. That Mr. Anderson and Townsend & Son failed to agree upon a price for their bonds, or a combination for bidding in the property, is no reason why the other parties should be denied the benefit of the sale. Mr. Anderson knew that the property was being sold in pursuance of the agreement of all the bondholders, and not on process from the superior court; that the mortgage securing

the one hundred thousand dollars in bonds was prior to any judgments Mr. Dolan had; and that the property was appraised at thirty-one thousand dollars, and would not sell for the amount of the bonds. Knowing these facts, there was nothing in the notice of Dolan that should have deterred him or Mr. Suber, with whom he was acting, from bidding. That Suber withdrew from his arrangement with Anderson for an insufficient reason does not warrant us in saying that the sale, made as it was, should be set aside, and the agreement under which it was made ignored. Appellants, being parties to the agreement under which the sale was made, should not now be heard to question the sale for any reason shown in the record. AFFIRMED.